DAVID H. FYFFE *vs.* CLARENCE THURBER, *Ex. et al.*

JULY 3, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto and Baker, JJ.

BAKER, J. This is a suit in equity brought for the purpose of having a trust imposed in the complainant's favor upon certain real estate and upon an account in a bank. After a hearing in the superior court, a final decree was entered denying the complainant relief as to said real estate, but granting the prayer of his bill in respect to said bank account. From the entry of this decree the respondents duly

appealed, and their appeal is now before this court. The complainant took no appeal from the entry of said decree.

The respondents are the executor of and the beneficiaries under the will of Leah C. Fyffe, complainant's deceased second wife, hereinafter referred to as Leah. The bank account, which is the only property involved in the present appeal, was in a bank in the city of Providence in her name at the time of her death. In general, the complainant contended that since their marriage, and even before that time, he turned his earnings over to Leah; that it was understood and agreed between them that said earnings were to be deposited by her in a joint account in the names of both; that withdrawals from said account were to be made only upon the consent of both; that Leah did not fully carry out the above-mentioned agreement, but a few years before her death, and without his knowledge, she opened an account in her own name with the greater part of an alleged joint account which stood in the names of both; that the newly opened account is the one in dispute in the instant suit; and that the funds in said account are entirely made up of his money.

On the other hand, the respondents argued that the complainant's earnings, after their marriage, were used to support himself and Leah; that the alleged joint account was made up of her own money; that she had no understanding with the complainant concerning said account or the withdrawals therefrom; that she voluntarily opened the alleged joint account in the names of herself and the complainant; that later, shortly before her death, the complainant's conduct displeased her, and she then withdrew most of the funds in that account and redeposited them in her own name, as she had a right to do.

The following facts appeared from the evidence. At the time of the trial in 1940 the complainant was about seventy-five years old. He was first married to Leah's sister, who died in April 1919. In 1922 he married Leah, who died May 8, 1940. They had no children. Leah was also mar-

ried before, her first husband, who died many years ago, having been named Chase. Up to the time of his first wife's death the complainant did laboring work of various kinds, having no trade, and the money that he had accumulated up to that time, together with a small amount of insurance money, was apparently largely spent in paying his first wife's funeral and other expenses. On May 12, 1919 he obtained a position as attendant at the state institutions and kept that position until June 1, 1940 when he retired. During this period he was paid about $17,097 in wages. He was also furnished most of his meals.

After the death of her first husband, Leah, who, according to the evidence, was industrious and frugal, was steadily employed as a practical nurse and as a textile worker. She supported herself, there being no children of that marriage, and apparently saved money. She lived with her mother and sisters and had savings accounts in her own name in banks in Providence and in Pawtucket during this period. On July 12, 1916 she also obtained a position at the state institutions as an attendant and worked there fairly steadily, but not constantly, until July 1, 1935. Between these dates she was paid approximately $6200 in wages for the above work. She also earned some additional money during this period, and after 1935, for looking after the children of certain doctors at the state institutions. About 1916 she received approximately a total of $2000 from her interest in her mother's estate; from her interest in farm property in Massachusetts; and by way of gift from her mother.

Not long after their marriage the complainant and Leah purchased an inexpensive lot in Cranston, not far from the state institutions, and erected thereon a house in which they made their home until Leah died. This property cost in all about $5000 and was clear of incumbrances. It was held by the complainant and Leah as joint tenants, and it now belongs to the complainant as the survivor. About the year 1934 Leah purchased a lot in Warwick, at Edgewater Beach, and built thereon a small summer cot-

tage containing a few rooms. This was the real estate involved in this suit, but not in this appeal. The title to this property which, according to the evidence, was valued at not over $1500, was taken in Leah's name alone and so remained at the time of her death. By her will, dated December 14, 1939, she devised the Warwick property to her brother, and left the remainder of her estate, which included the bank account in dispute, to certain nephews and nieces who are respondents herein.

It also appeared from the evidence that the account, upon which the superior court, by the decree appealed from, impressed a trust in the complainant's favor, was opened on June 5, 1937 in the Old Colony Cooperative Bank by Leah in her own name by a deposit of $2941.57. The balance in this account as of July 1, 1940 was $3382.72. This sum of $2941.57 was withdrawn by Leah on June 5, 1937 from the alleged joint account in the same bank standing in the names of herself and the complainant, and was immediately redeposited in her own name, as above mentioned. The balance then remaining in said alleged joint account, after the said withdrawal of $2941.57, was $500. This account was closed December 2, 1939, Leah having made several withdrawals therefrom subsequent to June 5, 1937. After the date last mentioned no deposits were made in said alleged joint account, the additions thereto being merely accumulated interest. Apparently, by agreement the bankbook containing the record of the alleged joint account, as to which Leah made all the deposits and all the withdrawals, was left at the bank while said account was in existence.

The evidence also showed that the alleged joint account, just referred to, was opened in the above-mentioned bank by Leah on September 28, 1931 by a deposit of $1800, which sum was on that date withdrawn from an account in the same bank standing originally in the name of Leah Chase, leaving a balance of $415.97 in the latter account. This was closed on November 15, 1932 by the withdrawal by

Leah of the balance of $34.32 then remaining therein. The bank records containing the detailed statement of the account last referred to were not available for evidentiary purposes, having been destroyed by the inundation following the hurricane of September 1938.

In addition, it appeared in evidence that there was an account in the name of Leah Chase in the Providence Institution for Savings. This account was opened in January 1915 and closed in January 1922. The largest balance therein was $1627.24 on July 2, 1921. There was a deposit in this account of $500 on March 29, 1919 by a check from Pawtucket. Numerous small deposits were made in the account thereafter until it was closed. The complainant contends that this $500 deposit was made with his savings which he claimed he had turned over to Leah to keep for him. As bearing on the reasonableness of this contention, it may be noted that the deposit in question was made before the complainant obtained his position at the state institutions, and while his first wife, Leah's sister, was still living, and that the complainant and his first wife had a savings account, standing in both their names, started by her prior to 1904, in the Slater Trust Company in Pawtucket. The bank records of this last-mentioned account were apparently not available as evidence.

In making his decision, the trial justice found, among other things, that the alleged joint account which was in the Old Colony Cooperative Bank from 1931 to 1937 did not constitute a joint tenancy; that "most" of the money in the alleged joint account was the complainant's; that Leah had lost a substantial part of her savings and earnings in speculation; and that there was an understanding and agreement between them that withdrawals would not be made from said account without the consent of both, which understanding and agreement the trial justice decided had been violated by her.

Thus, under the findings of the trial justice, the account in question was merely one standing in the names of both

the complainant and Leah, with the understanding that no withdrawals be made therefrom except with the consent of both. Because of the withdrawal of all but $500 of said account by Leah, and the redepositing in her own name of the money so drawn out, the complainant brought the present proceeding in which he seeks to follow and obtain the fund in dispute by having a trust imposed thereon in his favor, claiming that said fund was composed entirely of his own savings and earnings. The respondents, however, contest the above claim of the complainant, contending that the evidence shows that the fund was wholly made up of Leah's own money.

In our judgment neither of the above contentions can be supported in full. We believe that funds of the complainant and those of Leah went to make up the disputed account. The trial justice apparently recognized this fact to some extent in his finding when he held that "most" of the money in said account was contributed by the complainant, necessarily implying that the remainder had been contributed by Leah. However, the final decree did not recognize this situation, and made no provision for allotting any part of the account to Leah's estate. It is not disputed that the burden was upon the complainant to show to what extent a trust in his favor should be impressed upon said account.

Of course, Leah was dead and her testimony was not available; and, unfortunately, the records of certain prior bank accounts of the parties, which records might well bear upon the testimony of the complainant and other witnesses, could not be produced. Nevertheless, we are of the opinion that, from the evidence presented, reasonable inferences should have been drawn which supported, at least in part, the respondents' contentions, and that the trial justice was in error as to his finding respecting the sources from which the funds in the account in dispute came.

The complainant had the duty of supporting himself and Leah while they were married. During this period, covering some eighteen years, his average weekly earnings, by computation, were between $15 and $16 per week. From this sum, according to the evidence, he kept a little spending money, turning the balance over to Leah. Undoubtedly, part of his savings went into the house they built in Cranston a few years after their marriage. He also spent several hundred dollars on a short trip to Scotland, Leah remaining at home. Assuming that they lived frugally, and that they were furnished most of their meals at the state institutions, yet the ordinary expenses for clothing, upkeep of their home, and other reasonable costs for maintaining themselves must, it would seem, have consumed a considerable part of the complainant's earnings. Leah was, of course, if she saw fit, entitled to her own earnings and to her own separate estate.

In regard to her losses the evidence showed that for some time she was investing money in mortgages and buying stock through a corporation in Providence dealing in such investments. She apparently had done this prior to her marriage to the complainant, because it appeared in evidence that on August 13, 1921 she drew $1400 from her own account in the Providence Institution for Savings and paid that sum over to said corporation for investment purposes. Thereafter, at some time in the 1920s, the exact date not being in evidence, that corporation failed and it is not denied that Leah suffered losses. Just how extensive these were is not clear.

However, all the above transactions in regard to Leah's investments and losses took place prior to September 28, 1931, the date when the alleged joint account under consideration in this cause was opened. Finally, it may be observed that Leah worked at the state institutions between 1930 and July 1, 1935, and that her earnings during this period could not have been lost in the manner contended for by the complainant. In our opinion, the trial justice misconceived the evidence in finding that "most" of the money was contributed to the account by the complainant and that Leah had

lost substantially all her savings and earnings. His findings, therefore, in this regard were erroneous.

The finding of the trial justice that she lost practically all her savings is apparently based on the testimony of the complainant and of one or two of his witnesses. One of them, a sister-in-law of the complainant, testified in this connection as follows: " . . . she (Leah) said, 'You know I lost all the money that I had of my own personal money' so when she had to do anything she had to consult Dave because she and Dave, what they had, what they owned, was half and half, they both owned equal shares because she had lost her money." This witness further testified: "Well, we were talking about—she would want to do something and she would say, 'I will have to talk it over with Dave because what I have now belongs to both him and I, I can't do it unless I talk it over with Dave first.' " The date of these conversations is not clearly fixed, but it apparently was toward the latter part of Leah's life. Another witness testified in substantially the same language.

Even assuming that these alleged statements by Leah were actually made, it may be noted that she referred to losing all her own "personal money" and followed it with the remark that what they then had belonged to both equally. It is a more reasonable inference, from all the facts herein, that "personal money" referred only to what she had received from her mother's estate, from her own interest in the farm in Massachusetts, and by gift, rather than what she and the complainant had earned together and had deposited in the alleged joint account under their agreement.

Further, the evidence showed that in June 1931 she consulted an attorney in regard to making a claim, because of the losses above mentioned, against one of the officers of the corporation hereinbefore referred to. A claim amounting to $3249.84 was prepared by the attorney, but was never pressed. The complainant makes no contention that Leah suffered any financial losses except in connection with her dealings with the said corporation. Moreover, her own earn-

ings and receipts from all sources, other than money given her by the complainant, between 1916 and the time of her death, was upwards of $8000, apparently leaving a balance in her favor, after making allowance for contributions from her own funds toward the cost of the two parcels of real estate in which she had an interest.

The complainant has called to our attention the cases of *Peoples Savings Bank* v. *Staples*, 46 R. I. 356 and *Oliveira* v. *Oliveira*, 52 R. I. 92, as supporting his position. In our opinion, the *Staples* case, which was a bill of interpleader, does not support his contention that he was entitled to a trust in *all* of the money. In that case the court permitted the claimants to the fund only the amount each respectively proved. The *Oliveira* case above cited, in which the court held that a husband and wife had equal interests in an account, in our judgment resembles in many respects the present cause, and is not contrary to our present conclusions.

After due consideration of all the evidence, we find that the most complainant has established is that he and Leah had equal interests in the alleged joint account involved herein as of the date when said account was closed by the withdrawal and redeposit by Leah of the greater part of said account, *viz.*, on June 5, 1937. On that date the balance in such account was $3441.57. To this sum there properly should be added the six months' interest, which was credited to such account July 1, 1937, amounting to $43.03, making a total of $3484.60. The complainant and Leah would, therefore, each be entitled to one half of the amount last mentioned, namely, $1742.30. However, according to the evidence, Leah, before her death, received $543.03, being the balance of $500 which she left in said joint account and later withdrew, and the above-mentioned accrued interest, leaving a balance of $1199.27 due her, on her one-half interest in the entire alleged joint account. Between June 5, 1937 and the date of Leah's death only three deposits were made in the account then standing in her own name. During this period she was not regularly employed, and at least two of the de-

posits clearly indicate that they were made with the complainant's money. It is our opinion that Leah had no interest in the three deposits in question.

We find, therefore, that of the amount now standing in the present account in the Old Colony Cooperative Bank in Leah's own name, her executor is entitled to the sum of $1199.27, together with such interest as may have accrued on that sum since June 5, 1937, and that as to the balance remaining in that account a trust should be impressed thereon in favor of the complainant.

The respondents' appeal is sustained, and the decree appealed from is reversed.

The parties may, on July 7, 1941, present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Michael DeCiantis,* for complainant.

*Thomas L. Carty, Thomas F. Vance,* for respondents.